Lawrence **LANDRY** et al., Plaintiffs,

v.

**Richard J. DALEY, Mayor of the City of Chicago, Cook County, Illinois; James Conlisk, Superintendent of Police of the City of Chicago, Illinois; John S. Boyle, Chief Judge of the Circuit Court of Cook County, Illinois; John J. Stamos, State's Attorney of Cook County, Illinois; Raymond F. Simon, Corporation Counsel of the City of Chicago, Illinois; Joseph I. Woods, Sheriff of Cook County, Illinois; Richard J. Elrod, Assistant Corporation Counsel, City of Chicago, Division of Ordinance Enforcement; Maurice W. Lee, Magistrate, Circuit Court of Cook County, Illinois; John S. Limperis, Magistrate, Circuit Court of Cook County, Illinois; John T. Burke, Joseph Ratkvich and Robert Kulovitz, Police Officers of the City of Chicago, Defendants.**

No. 67 C 1863.

United States District Court
N. D. Illinois, E. D.
June 5, 1968.

195

See also D.C., 280 F.Supp. 968; D.C., 288 F.Supp. 183; D.C., 288 F.Supp. 189; D.C., 288 F.Supp. 200.

———◆———

Robert Tucker, R. Eugene Pincham, Kermit Coleman, Jean F. Williams, Ellis E. Reid, Lawrence E. Kennon, Leonard Karlin, Norman E. Lapping, Irving Birnbaum, Leo E. Holt, Cecil C. Butler, Edward Thompson, Chicago, Ill., Dennis J. Roberts, Newark, N. J., William M. Kunstler and Arthur Kinoy, New York City, for plaintiffs.

John J. Stamos, State's Atty., of Cook County, Illinois, Edward J. Hladis, Chief of the Civil Division, Ronald Butler, Dean Bilton, Asst. State's Attys., for defendant State Officers.

Before HASTINGS, Circuit Judge, and HOFFMAN and WILL, District Judges.

### OPINION

WILL, District Judge.

In the present context of this suit, plaintiffs seek declaratory and injunctive relief from the threatened and actual enforcement of certain Illinois statutes on the ground that the defendants have applied and threaten to continue to apply these statutes in an unconstitutional manner for the purpose of discouraging the plaintiffs' civil rights activities.[1] Originally, the complaint challenged both the enforcement of these statutes and two municipal ordinances of the City of Chicago.[2] It alleged two

1. The statutes presently involved in the suit are: Ill.Rev.Stat., Ch. 38, § 25–1 (Proscribing "Mob Action"); Ill.Rev.Stat., Ch. 38, § 31–1 (Proscribing "Resisting or Obstructing a Peace Officer"); Ill.Rev.Stat., Ch. 38, § 12–2 (Proscribing "Aggravated Assault"); Ill.Rev.Stat., Ch.

38, § 12–4(a) (5) (Proscribing "Aggravated Battery").

2. For a listing of these statutes and ordinances see Landry v. Daley, 280 F.Supp. 929, 932, n. 1 (N.D.Ill.1967).

bases for relief. The first was that these statutes and ordinances were unconstitutionally vague, indefinite, and overly broad regulations of speech and assembly. The second was that these statutes and ordinances were being enforced by county and municipal officials against the plaintiffs and others in bad faith for the purpose of harassing plaintiffs' exercise of protected expression and with no expectation of ultimately obtaining convictions, but knowing that plaintiffs' conduct did not violate the statutes and ordinances. At the time the plaintiffs filed their complaint, they moved that a three-judge court be convened to hear and determine the issues presented therein.

A preliminary inquiry was made by the district court to determine the sufficiency of the complaint and whether or not it was appropriate to convene a three-judge court. The complaint was found to raise several substantial constitutional issues and to allege a formal basis for equitable relief.[3] It was further determined that plaintiffs' claims regarding the challenged state statutes presented questions which under the provisions of 28 U.S.C. § 2281, were solely within the competency of a three-judge court. The plaintiffs' allegations in regard to the municipal ordinances, however, were found to be properly triable before a single judge. Accordingly, the claims relating to the municipal ordinances were severed from those regarding the state statutes and only the latter were certified to this Court.[4]

A determination of the propriety or impropriety of the application of these statutes to the plaintiffs' conduct was held in abeyance, and a hearing was held by this Court, dealing with only the plaintiffs' challenges to the constitutionality of the Illinois "Mob Action," "Re-

sisting or Obstructing a Peace Officer," and "Intimidation" statutes. An opinion disposing of these issues was filed by the Court on March 4, 1968.[5] Subsections (a) (2) of the "Mob Action" statute[6] and (a) (3) of the "Intimidation" statute[7] were found to be vague and overly broad. The remaining subsections of these statutes and the "Resisting or Obstructing a Peace Officer" statute[8] were found to be consistent with principles of substantive and procedural due process. A judgment order was then entered declaring the indicated sub-sections of the "Mob Action" and "Intimidation" statutes unconstitutional, null, and void under the due process clause of the Fourteenth Amendment to the Constitution of the United States. The remainder of each of these statutes and the "Resisting" statute were declared valid.

Since this judgment, prosecutions against certain plaintiffs under sub-section (a) (2) of the "Mob Action" statute have been dismissed by the defendants. There were no pending prosecutions under sub-section (a) (3) of the "Intimidation" statute. Therefore, the questions presently before this Court relate only to the propriety or impropriety of the application of certain valid state statutes to the plaintiffs' activities. Also pending before the Court is a motion by all the defendants to dismiss the action on the ground that principles of comity, as well as the provisions of Title 28, § 2283, require abstention.

Section 2281, Title 28 of the United States Code, simply requires that a claim of constitutional invalidity directed at a state statute be heard and determined by a three-judge court if injunctive relief is sought. It does not indicate whether other claims must be heard and determined by a three-judge

---

3. Id. at 934–937.

4. Id. at 937–938.

5. Landry v. Daley, 280 F.Supp. 938 (N.D. Ill.1968) (three-judge court).

6. Ill.Rev.Stat., Ch. 38, § 25–1 (1967).

7. Ill.Rev.Stat., Ch. 38, § 12–6 (1967).

8. Ill.Rev.Stat., Ch. 38, § 31–1 (1967).

court when joined with a claim requiring a three-judge court.

■ It is apparent, however, that a three-judge court would not be necessary to hear and determine plaintiffs' application for injunctive relief if it had rested solely on the ground that defendants are misusing the statutes to violate plaintiffs' constitutional rights. See Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Ex Parte Bransford, 310 U.S. 354, 359–361, 60 S.Ct. 947, 84 L.Ed. 1249 (1940). The Supreme Court noted in *Phillips*:

> Some constitutional or statutory provision is the ultimate source of all actions by state officials. But an attack on lawless exercise of authority in a particular case is not an attack upon the constitutionality of a statute conferring the authority even though a misreading of the statute is invoked as justification. At least not within the Congressional scheme of [the predecessor of § 2281]. 312 U.S. at 252, 61 S.Ct. at 484.

Nevertheless, the claims presently before this Court are, presumably, pendent to the claims upon which this Court's jurisdiction was properly invoked. Hence, there remains the question whether this court, having disposed of plaintiffs' claim that the challenged statutes are constitutionally invalid, has and must exercise jurisdiction over the other claims in the complaint.

The Supreme Court has considered the jurisdiction of a three-judge court in several cases where claims of a statute's constitutional invalidity were joined with other claims. In the most recent case, Florida Lime and Avocado Growers, Inc. v. Jacobsen, 362 U.S. 73, 80 S. Ct. 568, 4 L.Ed.2d 568 (1960), the Court held that a three-judge court is necessary when injunctive relief is sought on grounds of the unconstitutionality of a statute, even though the statute is also challenged on other grounds. The Court further held that the three-judge court has jurisdiction over *all* claims raised against the statute. Id. at 84–85, 80 S. Ct. 568.

The Court's holding in Florida Lime and Avocado Growers, Inc. v. Jacobsen, is consistent with its earlier decisions in Railroad Commission of State of California v. Pacific Gas and Electric Co., 302 U.S. 388, 58 S.Ct. 334, 82 L.Ed. 319 (1938) and Louisville and Nashville Railroad Co. v. Garrett, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229 (1913). Both those cases involved rate orders of state administrative bodies that were being challenged on various state and federal grounds, including that of constitutional invalidity. The Court held in both cases that the three-judge court had jurisdiction "to determine all the questions in the case, local as well as federal." 231 U.S. at 303, 34 S.Ct. at 50, 302 U.S. at 391, 58 S.Ct. at 337.

In these three cases all the issues concerned the *validity of the statute or administrative order*, each presenting a different challenge. Consequently, they do not control the three-judge court's jurisdiction of claims not challenging the validity of a statute or administrative order.

Yet, on one occasion the Court has held that a three-judge court's jurisdiction extended to questions other than the validity of a statute or administrative order. See Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375 (1932). In the *Sterling* case, the plaintiffs sought an injunction restraining state officials from enforcing executive orders of the Governor of Texas declaring martial law and regulating oil production. The grounds of attack were: that the orders violated the federal constitution, that they violated the state constitution, that they were not authorized by the state constitution or state laws, and that if they were authorized by state statutes, those statutes violated the state and federal constitutions.

The three-judge court entered an injunction on the ground that the orders were without authority in Texas law,

and when the case subsequently reached the Supreme Court, it affirmed. The Court noted that the jurisdiction of the three-judge court was founded on plaintiffs' attack on the constitutionality of state statutes. It then stated,

> The jurisdiction of the District Court so constituted, and of this Court upon appeal, extends to every question involved, whether of state or federal law, and enables the court to rest its judgment on the decision of such of the questions as in its opinion effectively dispose of the case. 287 U.S. at 393–394, 53 S.Ct. at 193.

The Court assumed, without deciding, that Texas law authorized the Governor's orders, and affirmed the three-judge court's decree on the ground that the orders violated the federal Constitution, there being no military necessity for them.

Implicit in the Court's opinion in *Sterling* is one of the rationale for extending the jurisdiction of a three-judge court beyond the narrow issue that required its creation. If the Court can rest its judgment on grounds other than the federal constitutional invalidity of a state statute, it can avoid the serious step of voiding the statute.

A second rationale alluded to by the Supreme Court is that all controversial issues should be resolved in a single action. In Public Service Commission of Missouri v. Brashear Freight Lines, Inc., 312 U.S. 621, 61 S.Ct. 784, 85 L.Ed. 1083, the Court stated in dicta:

> A District Court composed of three judges under [the predecessor of § 2281] of course has jurisdiction to determine every question involved in the litigation pertaining to the prayer for an injunction, in order that a single lawsuit may afford final and authoritative decision of the controversy between the parties. 312 U.S. at 625, n. 5, 61 S.Ct. at (citing Railroad Comm'n of State of California v. Pacific Gas and Electric Co., supra, and Sterling v. Constantin, supra, as authority).

The jurisdictional question before this Court is similar to one decided by a three-judge court sitting in the Fifth Circuit in 1966. See Turner v. Goolsby, 255 F.Supp. 724 (S.D.Ga.1966). Counts I and II of the complaint in that case attacked the constitutionality of two Georgia criminal statutes; Count III alleged a conspiracy to deny plaintiffs their constitutional rights by maintaining school segregation.[9] The court recognized that its jurisdiction under § 2281 was founded on Counts I and II and determined "as a matter of discretion" to exercise jurisdiction over Count III. The court elected to exercise jurisdiction because the three counts were "so interrelated as to present one continuous transaction or set of operative facts * * *." 255 F.Supp. at 731.

In all these cases, the consideration given to the scope of three-judge jurisdiction was almost casual. The most careful consideration yet reported is in an order of Chief Judge Bazelon of the District of Columbia Circuit. See Hobson v. Hansen, 256 F.Supp. 18 (D.C.Cir. 1966). Pursuant to 28 U.S.C. § 2284, Judge Bazelon was requested to convene a three-judge court to hear and determine an application for an injunction restraining school officials of the District of Columbia. Count I of the complaint challenged the constitutionality of an act of Congress prescribing the method of appointing the board of education for the district. Counts II through VI sought the abatement of alleged racial and economic discrimination by school authorities. Judge Bazelon, exercising his authority under § 2284 to determine whether substantial constitutional issues were raised, had convened a three-judge court and referred only Count I to it, leaving Counts II through VI to be heard by a single-judge court. Defendants then moved for an order referring Counts II through VI to the three-judge court on the ground that a three-judge court, once impaneled under 28 U.S.C. § 2284, has complete jurisdiction over the

---

9. The court treated a fourth count as moot.

entire case and neither a single-judge court nor the chief judge of the circuit has the power to divest the three-judge court of its jurisdiction. Judge Bazelon denied the motion.

According to his opinion, there are two rationale for broad three-judge jurisdiction. First, grounds other than the constitutional invalidity of a statute should be available to the three-judge court so that it may, if possible, avoid invalidating the statute. Second, where all challenges to a statute rest on the same set of facts, judicial efficiency is best served if all challenges are heard at one time by one tribunal. 256 F.Supp. at 20. Judge Bazelon found that neither of these rationale applied in the case before him.

Hobson v. Hansen involved § 2282 rather than § 2281. However, these two sections are substantially identical, and, therefore, Judge Bazelon's reasoning would seem applicable in a case, such as the instant one, involving § 2281.

■ The rationale for a broad three-judge jurisdiction found in the opinions of the Supreme Court and explicitly recognized by Judge Bazelon in the *Hobson* case are not applicable in the instant suit in its present context. This court has already heard and disposed of the plaintiffs' challenges to the validity of the several challenged statutes involved in this suit and the plaintiffs have abandoned their attacks on the validity of the other statutes. The remaining claims are not related to the validity of the statutes, but only to their "application." The first rationale for the exercise of jurisdiction over such pendent claims is thus completely irrelevant.

■ Likewise, the second rationale is not pertinent. Since the normal rules of standing are relaxed in the area of First Amendment freedoms, this Court was required to decide whether the statutes in question were overly broad or vague independently of the circumstances of their application.[10] Consequently, no evidence was received as to the operative facts underlying the application of these statutes to the plaintiffs' activities. Therefore, the referral of the present claims to a single-judge court for any necessary trial, would not result in a duplication of the efforts of either this court or the attorneys.

Moreover, the efficient administration of federal courts must be considered. This consideration was appropriately described by Judge Bazelon in Hobson v. Hansen:

> "The three judge procedure is an extraordinary one, imposing a heavy burden on federal courts, with attendant expense and delay. That procedure, designed for a specific class of cases, sharply defined, should not be lightly extended." [citing Oklahoma Gas & Elec. Co. v. Oklahoma Packing Co., 292 U.S. 386, 391, 54 S.Ct. 732, 78 L.Ed. 1318 (1934)] To allow joinder of claims unrelated to the legislation under attack would severely undermine the sharply limited purpose for three-judge courts, at heavy cost to judicial administration both in the lower federal courts and in the Supreme Court. 256 F.Supp. at 21.

Judicial efficiency would be promoted, not retarded, by return of the claims presently involved in the instant suit to a single-judge court.

■ For the foregoing reasons, we conclude that this court, as a matter of discretion, should decline to exercise its jurisdiction over the plaintiffs' remaining claims and the defendants' pending motion, and we return them to the single judge to whom the case was originally assigned. An appropriate order will enter.

10. See Thornhill v. State of Alabama, 310 U.S. 88, 97–98, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). See, also, Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).