## PUBLIC SERVICE COMMISSION OF MISSOURI ET AL. *v.* BRASHEAR FREIGHT LINES, INC. ET AL.

No. 549.   Argued March 10, 1941.—Decided March 31, 1941.

*Mr. Daniel C. Rogers,* with whom *Messrs. James H. Linton* and *Edgar H. Wayman* were on the brief, for petitioners.

*Mr. Kenneth Teasdale,* with whom *Mr. Paul G. Koontz* was on the brief, for respondents.

MR. JUSTICE BLACK delivered the opinion of the Court.

The issues in this case revolve around the power of a federal District Court to assess damages allegedly caused by a temporary injunction issued by the court but later dissolved on final hearing. These issues grow out of this situation: Respondents in this Court, seventy-six

individuals, partnerships, and corporations operating trucks as common carriers in interstate commerce, filed a bill in the federal District Court to enjoin petitioners here, Missouri officials and agencies, from enforcing against them certain allegedly unconstitutional tax and license features of the Missouri Bus and Truck Law.[1] A single district judge granted a temporary restraining order under which respondents were required to post injunction bonds and under which the contested fees were to be deposited with a trustee during the litigation. But because the bill sought to restrain state officials from enforcing an allegedly unconstitutional state statute, the case was set down for hearing before a three judge District Court pursuant to § 266 of the Judicial Code as amended, 28 U. S. C. § 380. Petitioners, in their answer to respondents' complaint, counterclaimed for fees and licenses the respondents had failed to pay in the past[2] and later amended the counterclaim to include amounts the respondents failed to deposit with the trustee during the litigation. Ultimately, the three judge court found the Bus and Truck Law constitutional, dissolved the restraining order, dismissed the truck operators' bill, and also ordered the counterclaim dismissed without prejudice because of "serious doubt as to the right of the de-

---

[1] Mo. Rev. Stats. (1929) § 5272, as amended by Mo. Laws (1931), p. 311. The Missouri officials were the Attorney General, the Superintendent of the State Highway Patrol, the State Highway Commission, and the Public Service Commission. The ground of attack on the statute was that it violated the Federal Constitution and the federal Motor Carrier Act of 1935, 49 Stat. 543, 49 U. S. C. §§ 301–327 (Supp. 1939).

[2] Respondents denied "each and every allegation, statement and thing" contained in the counterclaim. Later they contended that it was the understanding of the parties that should the counterclaim become material, then this pleading could be withdrawn and "an opportunity to plead fully" to the counterclaim be exercised. Petitioners denied that there was any such understanding.

fendants to maintain" such an action. The truck operators did not appeal from the dismissal of their bill. Petitioners' attempt to bring the dismissal of their counterclaim here by direct appeal was dismissed for want of jurisdiction. 306 U. S. 204. Thereupon the petitioners, on their own behalf and "in behalf of the State of Missouri and of the State Treasurer," filed in the three judge court a motion for assessment of damages and costs against the truck operators and their injunction bond sureties. That court denied the requested relief on the ground that the questions presented by the motion for damages had been ruled upon and finally determined by the judgment dismissing the original counterclaim. The Circuit Court of Appeals affirmed,[3] but on a different ground. It held that the motion to assess damages involved issues ancillary to the original litigation, which would require a long and complicated inquiry; that such litigation is not the type for which a three judge court is provided; that the three judge court, however, did have jurisdiction to consider the motion if it saw fit, or to remit it to the single district judge; and that the action actually taken by the three judge court was final, since under the circumstances that court had not abused its discretion. We granted certiorari, 311 U. S. 642, primarily because of the procedural importance of determining the statutory function of a three judge court in dealing with questions such as those here presented. The case as presented to us requires that we give consideration to these questions:

1. Should the two additional judges, called to assist the district judge pursuant to § 266, have participated in consideration of the motion to assess damages?

2. Was the District Court correct in holding that its prior denial of the counterclaim was a final adjudication

---

[3] 114 F. 2d 1.

of the issues presented by petitioners' motion to assess damages?

3. Were the enjoined Missouri officials and agencies, to whom the injunction bonds ran, proper parties to invoke the court's action for assessment of damages?

4. Did the District Court erroneously exercise its discretionary power, by its refusal to hear and determine the merits of petitioners' motion to assess damages?

*First.* We are of opinion that the two judges called in under § 266 to assist the district judge in passing upon the application for injunction should not have participated in consideration of the motion to assess damages. The limited statutory duties of the specially constituted three judge District Court had been fully performed before the motion for assessment of damages was filed. For § 266 of the Judicial Code provides for a hearing by three judges, instead of one district judge, only in connection with adjudication of a very narrow type of controversy—applications for temporary and permanent injunctions restraining state officials from enforcing state laws or orders made pursuant thereto upon the ground that the state statutes are repugnant to the Federal Constitution.[4]  The motion for damages raised questions not within the statutory purpose for which the two additional judges had been called.  Those questions were therefore for the consideration of the District Court in the exercise of its ordinary jurisdiction, and the three judge requirement of § 266 had no application.[5]

[4] See *Phillips* v. *United States,* 312 U. S. 246; *Oklahoma Gas & Electric Co.* v. *Oklahoma Packing Co.,* 292 U. S. 386; *Ex parte Public National Bank,* 278 U. S. 101, 104.

[5] A District Court composed of three judges under § 266 of course has jurisdiction to determine every question involved in the litigation pertaining to the prayer for an injunction, in order that a single lawsuit may afford final and authoritative decision of the controversy between the parties. *Railroad Commission* v. *Pacific Gas &*

But the fact that it was mistakenly assumed that the motion should be passed upon by the district judge in association with the two judges previously called did not of itself invalidate the District Court's judgment dismissing the motion. Though that judgment of dismissal was not appealable directly to this court under § 266, even though participated in by three judges,[6] it was reviewable by the Circuit Court of Appeals, and since it has been so reviewed, the issues presented are properly before us.

*Second.* The ground assigned by the District Court for denying the motion to assess damages was that by its previous dismissal of petitioners' counterclaim it had already ruled upon and finally determined the questions raised by the motion. The original counterclaim, however, was dismissed without a hearing on the merits. No evidence was heard. It was dismissed, as the court said at the time, because of "serious doubt as to the right of the defendants to maintain such counterclaim," and in the order of dismissal it was specified that the action taken was "without prejudice to the right of the defendants . . . to maintain an independent action or suit thereon." We need not here point out the procedural reasons which might have caused the "serious doubt" which prompted the court to dismiss the counterclaim. For even assuming that the court properly dismissed the counterclaim without a hearing on the merits, it does not follow that its dismissal was a final adjudication of either the procedural or the substantive right of petitioners to invoke the court's jurisdiction by a motion to assess damages. Some of the damages asserted in the

*Electric Co.,* 302 U. S. 388, 391; *Sterling* v. *Constantin,* 287 U. S. 378, 393–394.

[6] See, e. g., *Public Service Commission* v. *Columbia Terminals Co.,* 309 U. S. 620; *Public Service Commission* v. *Brashear Freight Lines,* 306 U. S. 204, 207. Cf. *Eichholz* v. *Public Service Commission,* 306 U. S. 268.

motion—such as the costs of the litigation—were not asserted in the counterclaim, and such damages could not well have been determined until after final adjudication of the issues which caused the three judge court to be invoked. The record shows that action on the counter-claim was deferred pending full hearing on the consti-tutionality of the Missouri statute under attack. This postponement might well be attributed to a belief on the part of the court that the questions raised by the counterclaim were matters which could be better deter-mined after final determination of the issues presented by the original bill for injunction. The judgment dis-missing the motion for assessment of damages cannot be supported upon the ground that the issues raised by it had been adjudicated in the prior dismissal of the counter-claim.

*Third.* Respondents also seek to support the court's judgment upon the ground that the enjoined state offi-cials and agencies are not the proper parties to invoke the court's action for assessment of damages brought about by the injunction. This claim cannot be sus-tained. The argument on which it rests is that the State Treasurer, not the Public Service Commission, is given statutory power to collect the fees that are in part the basis of the motion to assess damages. But peti-tioners insist that the Public Service Commission actu-ally collects the fees under customs and rules of long standing, and urges that statutory authority exists for such action by the Commission. But whoever has the statutory authority to collect fees, it is not denied that the Missouri Attorney General, one of the enjoined and petitioning officials, is given exclusive authority to bring suit in the name of and on behalf of the state.[7] And if

---

[7] Mo. Rev. Stats. (1929) § 11276. (Mo. Rev. Stats. (1939) § 12901.)

upon a hearing damages are shown to have been suffered within the terms and conditions of the injunction bonds, the district court sitting in equity has ample power to see that whatever sums are recovered go to the proper state officials. In addition to this, respondents are in a poor position to argue that petitioners are not proper parties, for one of the grounds upon which the respondents claimed an injunction against these particular petitioners was that it was they who were threatening to bring actions against respondents to collect the very fees which are now a part of the present motion for assessment of damages. At the instance of the operators, these state officials were for a period of fifteen months deprived of all opportunity to collect any fees except those deposited with the trustees pursuant to the terms of the restraining order. Petitioners' motion alleges that many operators failed to comply with the conditions imposed by the order, and that the state has been deprived of fees that it would have collected but for the injunction. The respondents did not bring their suit nor press their claim upon the assumption that these officials could not and would not protect the interest of the state. On the contrary, they acted upon a directly opposite premise and executed bonds running to the enjoined officials in which they agreed to pay the damages suffered. It is obvious, and was obvious from the beginning, that the main damages would be suffered by the State of Missouri and not by these petitioners as individuals. It was to protect the state through its officials that the bonds were required. In making this requirement the court acted in harmony with the governing principle "that it is the duty of a court of equity granting injunctive relief to do so upon conditions that will protect all—including the public—whose interests the injunction may affect." *Inland Steel Co.* v. *United States,* 306 U. S. 153, 157. Petitioners were proper parties to invoke the court's

protection of the state's interest, and we have no doubt but that the court can mould any decree it renders so as to safeguard the rights of all interested parties.

*Fourth.* There yet remains the basis upon which the court below affirmed the District Court's refusal to assess damages—that the jurisdiction to exercise this power is discretionary, and that refusal to exercise the power was not shown to be erroneous. In considering this question, it is of no importance that dealing with petitioners' motion for assessment of damages would involve long and complicated hearings on issues inappropriate for decision by a three judge court. For as we have pointed out, the issues were appropriate for decision by the single judge of the district. There can be no question of that judge's right to deal with issues such as those here presented. Under long settled equity practice, courts of chancery have discretionary power to assess damages sustained by parties who have been injured because of an injunctive restraint ultimately determined to have been improperly granted. *Russell* v. *Farley*, 105 U. S. 433, 444 *et seq.; Pease* v. *Rathbun-Jones Engineering Co.*, 243 U. S. 273, 279. This power is, as stated, discretionary; there are of course cases where the Chancellor might properly conclude that parties should be remitted to an action at law. But this is not one of those cases. If petitioners had to bring actions at law, each of the seventy-six respondents might have to be made a defendant in a separate action. There is a controversy between the parties as to whether or not all of these respondents could be sued or served in the State of Missouri; to be compelled to sue some of them elsewhere would work a hardship on the state. In addition to this, part of the damages for which petitioners seek recovery is made up of various items of cost and expense incurred in the litigation; if petitioners succeed on the merits, there might conceivably be serious problems raised by the

seventy-six respondents as to the portion of damages fairly attributable to each—a problem peculiarly appropriate to equity, and preëminently adapted to settlement by a single court. Here, respondents joined themselves together in order jointly to restrain petitioners; they executed joint bonds; and they invoked the action of equity which has traditionally exerted its power not merely to assess damages caused by improvident injunctions but also to prevent the harmful consequences of an unnecessary multiplicity of causes of action. The circumstances of this case call so strongly for an assessment by equity that we think the court erred in dismissing the motion for assessment of damages. And it is especially fitting that equity exert its full strength in order to protect from loss a state which has been injured by reason of a suspension of enforcement of state laws imposed by equity itself.[8] The judgment of the court below is reversed and the cause is remanded for proceedings before a single district judge in conformity with this opinion.

*Reversed and remanded.*

---

[8] Cf. *United States* v. *Morgan*, 307 U. S. 183, 197; *Inland Steel Co.* v. *United States*, 306 U. S. 153, 158; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U. S. 134, 145–146.